**UROLOGIX, INC., Plaintiff,**

v.

**PROSTALUND AB, Prostalund Operations AB, and Circon Corporation a/k/a ACMI Corporation, Defendants.**

No. 02–C–0318.

United States District Court, E.D. Wisconsin.

Oct. 10, 2002.

Robert Briesblatt, for Plaintiff.

Kathleen S. Donius, Doris Hines, Willem G. Schuurman, for Defendants.

### DECISION AND ORDER

ADELMAN, District Judge.

Plaintiff Urologix, Inc. ("Urologix") alleges that defendants ProstaLund AB, ProstaLund Operations AB, and Circon Corporation a/k/a ACMI Corporation (collectively, "ProstaLund") infringe U.S. Patent No. 5,234,004 (issued Aug. 10, 1993) (the "'004 patent"), entitled "Method and Apparatus for the Surgical Treatment of Tissues by Thermal Effect, and in Particular the Prostate, Using a Urethral Microwave–Emitting Probe Means" and U.S. Patent No. 5,509,929 (issued Apr. 23, 1996) (the "'929 patent"), entitled "Urethral Probe and Apparatus for the Therapeutic Treatment of the Prostate by Thermotherapy," both assigned to Urologix. On July 24–25, 2002, I heard arguments on claim construction pursuant to *Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 388–90, 116 S.Ct. 1384, 134 L.Ed.2d 577 (1996), and on Urologix's Motions for a Preliminary Injunction and ProstaLund's Motion for Summary Judgment of Invalidity of the '004 patent under 35 U.S.C. § 102(d). This decision addresses the latter motion. ProstaLund argues that the '004 patent's foreign priority reference, French publication 88 15126, is prior art under section 102(d) because of a failure of copendency under 35 U.S.C. § 120 between the '004 patent and its parent application.

## I. SUMMARY JUDGMENT STANDARD

Summary judgment is proper if the evidence shows that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The mere existence of some factual dispute does not defeat a summary judgment motion; there must be a genuine issue of material fact. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). However, when the evidence presented shows a dispute over facts that might affect the outcome, summary judgment is precluded and must be denied. *See id.*

The moving party has the initial burden of demonstrating that it is entitled to summary judgment. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Once the movant's burden is met, the nonmoving party must "go beyond the pleadings" and point to specific genuine issues of material fact. *See* Fed.R.Civ.P. 56(e); *see also Celotex*, 477 U.S. at 322–23, 106 S.Ct. 2548.

In evaluating a motion for summary judgment, the court must draw all inferences in a light most favorable to the nonmoving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). To prevail on a motion for summary judgment of invalidity of a patent, the movant must prove invalidity by clear and convincing evidence. *See Anderson*, 477 U.S. at 248, 106 S.Ct. 2505.

## II. RELEVANT LAW

■ A party applying for a patent must comply with the applicable rules established by Congress and the United States Patent and Trademark Office ("PTO"). The applicant must be "vigilant and active" in complying with the condi-tions for obtaining a patent. *Woodbury Patent Planing–Mach. Co. v. Keith*, 101 U.S. 479, 485, 25 L.Ed. 939 (1879). The applicant has the burden of ensuring that papers are filed timely and of inquiring into potential problems during the application process. *See In re Holland Am. Wafer Co.*, 737 F.2d 1015, 1018–19 (Fed.Cir. 1984) (involving trademark registration application); *In re Swissco Foods Ltd.*, 25 USPQ2d 1552, 1553 (Comm'r of Patents & Trademarks 1992) (same). And although the PTO may notify applicants about irregularities, it has no obligation to do so. *See In re Patent No. 4,461,759*, 16 USPQ2d 1883, 1883 (Comm'r of Patents & Trademarks 1990).

Two sets of rules regarding the application process are relevant to the question of whether the '004 patent is invalid: (1) the requirements for obtaining the benefit of an earlier filing date based on a parent application, and (2) the rules governing the time to respond to an Office Action of the PTO. I discuss these provisions separately.

### A. Obtaining The Benefit of An Earlier Filing Date Based on a Parent Application

■ Generally, a patent application is considered filed on the date when the specification and any drawings are filed with the PTO. 37 C.F.R. § 1.53. However, under 35 U.S.C. § 120, a U.S. patent application may obtain the filing date of an earlier-filed U.S. application if, *inter alia*, it is filed "before the patenting, abandonment, or termination of proceedings on the first application" and the two applications have the same inventor(s). *Id.* § 120. Thus, in order for the filing date of an earlier application to be claimed as the filing date of a later filed application, the later one must be pending in the PTO at the same time as the earlier one. This requirement is referred to as the "copendency require-

ment." A U.S. patent also may obtain the filing date of a corresponding, earlier-filed foreign patent application if the U.S. application is filed within one year of the filing date of the foreign application. *See id.* § 119.

### B. Deadlines for Responding to PTO Office Actions

Title 35, U.S.C. § 133 establishes the time periods for responding to communications from the PTO:

> Upon failure of the applicant to prosecute the application *within six months after any action therein*, . . . , *or within such shorter time, not less than thirty days, as fixed by the Commissioner in such action,* the application shall be regarded as abandoned by the parties thereto, unless it be shown to the satisfaction of the Commissioner that such delay was unavoidable.

*Id.* § 133 (emphasis added). The Commissioner has established three months as the time period for responding to a PTO Office Action on the merits; this period is commonly called the "shortened statutory period for response." *See* Manual of Patent Examining Procedure ("MPEP") 710.02(b) Shortened Statutory Period: Situations Where Used, rev. 6 (1987) ("Under the authority given him by 35 U.S.C. 133 the Commissioner has directed the examiner to set a shortened period for response to every action. . . . THREE MONTHS To respond to any Office action on the merits."). However, upon request and payment of a fee, a party may extend the time to respond by up to an additional three months. 37 C.F.R. § 1.136(a); *see also* 35 U.S.C. § 41(a)(8) (requiring the PTO to charge fees for extensions of time). If a party fails to respond within the time allowed, the application is considered aban-

doned. 35 U.S.C. § 133. "[T]he date of the abandonment is after midnight of the date the period for reply actually expired. This is normally the end of the 3–month shortened statutory period." MPEP § 711.04(a).

### III. FACTS

On November 21, 1988, Gerard Hascoet, et al. (the "Applicants") filed a patent application in France, French Publication No. 88 15126 ("1988 French publication"). On November 17, 1989, the Applicants filed a corresponding U.S. patent application, serial No. 438,741 (the " '741 application"), claiming a priority under 35 U.S.C. § 119 to the 1988 French publication. Based on the priority claim, the '741 application obtained an effective filing date of the 1988 French publication, November 21, 1988. On November 21, 1990, the PTO issued an Office Action in the '741 application requiring a response from the Applicants. The parties disagree as to how much time the Applicants had to respond to the Office Action. However, it is undisputed that no response was filed, and at some point, the '741 application became abandoned. The parties dispute when the '741 application actually became abandoned. The PTO had previously initiated several other Office Actions on the '741 application before it became abandoned; and the parties do not dispute that the time period for responding to each of these was three months. On March 12, 1991, the Applicants filed U.S. patent application serial No. 667,847 that matured into the '004 patent. The '004 patent claims to be a continuation-in-part ("CIP") of the '741 application and thereby claims an effective filing date of November 21, 1988, the filing date of the 1988 French publication.[1]

---

1. The '004 patent also claims priority to French publication No. 90 03121 published

March 12, 1990 (the "1990 French publication"). As the '004 patent was filed within

## IV.  ANALYSIS

■ In order for the '004 patent to be valid, it must be entitled to the filing date of the corresponding 1988 French publication. It is undisputed that its parent, the '741 application, is entitled to the filing date of the 1988 French publication. Thus, the application for the '004 patent must have been filed "before the . . . abandonment" of the '741 application. *See* 35 U.S.C. § 120. The question, therefore, is whether the '004 patent application was filed before the '741 application became abandoned. This depends on when the '741 application became abandoned.

ProstaLund argues that the '741 application was abandoned as of midnight February 22, 1991, when the Applicants failed to respond to the PTO Office Action after three months. Urologix argues that the Applicants had more than three months to respond, or, that at least there is a genuine issue of fact as to whether this was so. Alternatively, Urologix also argues that, even if the Applicants had only three months to respond, they obtained an extension of time from the PTO, or that the PTO waived the requirement that they obtain an extension.

### A.  Under PTO Rules, the Applicants had Three Months to Respond

As stated above, the standard period for responding to an Office Action is three months. *See* MPEP § 710.02(b). In the present case, the record confirms that the Applicants had three months to respond to the November 21, 1990 Office Action. The Table of Contents on the cover of the prosecution history of the '741 application indicates that there was a three-month response period. (R. 62 Ex. F.) The cover sheet of the Office Action states that the Applicants had a *"shortened statutory pe-*

*riod for response* to this action." (*Id.* Ex. D (emphasis added).) As discussed above, the phrase "shortened statutory period for response" is a term of art meaning, in the case of Office Actions on the merits, three months. *See* MPEP § 710.02(b). Additionally, there were other Office Actions issued on the merits during prosecution of the '004 patent application. In each of these, the Examiner indicated that the Applicants had three months to respond. Based on the foregoing, no reasonable jury could conclude that the Applicants had other than three months to respond to the Office Action.

Nonetheless, Urologix argues that the time period was unclear and points to a handwritten notation on the cover page of the Office Action. The cover page states in type, "A shortened statutory period for response to this action is set to expire ____ month(s), ____ days from the date of this letter. Failure to respond within the period for response will cause the application to become abandoned. 35 U.S.C. § 133." (R. 61 Ex. D.) In the first blank is a handwritten mark that ProstaLund argues is a "3" and Urologix argues is an unidentifiable "squiggle." In the second blank is a dash. Urologix's argument that the time period may have been more than three months is based on the contention that the notation is a "squiggle." However, its argument is unpersuasive. First, the handwritten mark appears to be a "3," not a "squiggle." Even assuming it is a "squiggle," a "squiggle" is not a sufficient basis to cause a reasonable fact-finder to conclude that the response period was other than three months. The Applicants had the burden of clarifying any ambiguity resulting from the "squiggle" concerning how much time they had to respond. *See*

one year of the 1990 French publication, Urologix's claim of priority under section 119 to

that application is not at issue. *See* 35 U.S.C. § 119.

*e.g., Holland Am. Wafer,* 737 F.2d at 1018–19.

## B. The '741 Applicants Did Not Obtain an Extension

Although patent applicants may obtain extensions of time to respond to office actions, 37 C.F.R. § 1.136(a), there is no evidence that the Applicants here petitioned for or obtained an extension of time to respond to the November 21, 1990 Office Action. I look first to the prosecution history, the written record of proceeding before the PTO. *See Rohm & Haas Co. v. Crystal Chem. Co.,* 722 F.2d 1556, 1572 (Fed.Cir.1983) ("[A]ll business with the PTO is to be transacted in writing and its actions must be based exclusively on the written record[.]"); 37 C.F.R. § 1.2 (stating the PTO must transact its business in writing). The record of the '741 application discloses no evidence that the Applicants petitioned for or obtained an extension of time to respond to the November 21, 1990 Office Action or paid the fee which must accompany a petition for extension. (*See* R. 41 Ex. 2 ('741 application prosecution history containing no petition for extension or record of a fee); R. 62 Ex. F (Table of Contents for '741 application prosecution history showing no record of a petition for extension or fee).) Nor has Urologix presented any evidence outside the record indicating that a petition was filed or a fee paid.

Urologix argues that I must infer that a petition for an extension was filed and granted because there is no express evidence to the contrary and because papers can get lost in the PTO. In support of its argument Urologix offers "example[s] of what can happen to papers." (R. 61 at 19.) However, to defeat a motion for summary judgment, Urologix cannot rely on speculation; it must offer evidence. *See* Fed. R.Civ.P. 56(e). Urologix's "examples" are no more than speculation and create no genuine issue of material fact about whether a petition and fee were in fact filed in this case. *See id.*

## C. The PTO Did Not Waive the Rule Requiring Applicants to Obtain an Extension

█ Urologix argues that the PTO waived the rule requiring that applicants obtain an extension if they wish to respond to an Office Action after three months. The record discloses no evidence of a waiver.[2] Nevertheless, Urologix argues that a waiver must be implied from the circumstances of the case.

Urologix cites to 37 C.F.R. § 1.183, which states,

> In an extraordinary situation, when justice requires, any requirement of the regulations in this part which is not a requirement of the statutes may be sus-

---

**2.** ProstaLund argues that the three-month shortened period for response is a statutory period that cannot be waived by the PTO. *See* 37 C.F.R. § 1.183. Even though the PTO deems the response period a "shortened *statutory* period for response," the plain language of the relevant statute appears to support Urologix's position that the period is regulatory and hence waiveable. *See* 35 U.S.C. § 133 (emphasis added). Section 133 states that the period shall be six months "or within such shorter time ... as fixed by the Commissioner," indicating that the Commissioner is responsible for the three-month period. *See*

*also* MPEP § 710.02(b); *cf. Commonwealth of Australia v. Radio Corp. of Am.,* 399 F.2d 807, 812 (2d Cir.1968) (holding that 35 U.S.C. § 146 sets an open ended period and leaves it to the Commissioner to regulate a final date within which actions must be appealed); *Eckey v. Watson,* 268 F.2d 891, 891 (D.C.Cir. 1959) (holding that the Commissioner has regulatory authority under 35 U.S.C. § 145 for bringing suit in federal court). However, I need not reach the question of whether the period can be waived, because, even assuming that it can, Urologix's argument fails for reasons discussed.

pended or waived by the Commissioner or the Commissioner's designee, sua sponte, or on petition of the interested party, subject to such other requirements as may be imposed.

This provision specifies that, in some circumstances, the PTO may waive its own regulations. However, the provision is of no help to Urologix because it does not authorize the PTO to waive statutory requirements. The requirement that the PTO charge a fee for filing petitions for extensions of time is statutory. *See* 35 U.S.C. § 41(a)(8). And there is no evidence in the record that any fee was charged or paid. Thus, the waiver that Urologix argues must be implied could not have legally occurred.

Even if the PTO could have waived all the rules governing extensions, there is virtually no evidence that it did so. Urologix points to the cover page of the '004 prosecution history where a PTO Examiner placed his initials beneath the words "CONTINUING DATA ... VERIFIED." (R. 61 Ex. M.) Urologix argues that it may be inferred from this notation that the Examiner waived the three-month time period for the '741 application and found the '004 patent application to be copendent with the '741 application. ProstaLund argues that the notation simply means that the Examiner reviewed the cover page to make sure that the printed information was consistent with the information provided in the inventors' oath or declaration. The notation itself is ambiguous. However, the relevant statutory and MPEP provisions make Urologix's proposed inference unreasonable.

In order for the applications to be copendent, the Examiner would have had to extend the time for the Applicants to respond to the Office Action. *See* 35 U.S.C. § 120. However, as discussed, the PTO had no authority to take the steps necessary to extend the time period. By statute, the PTO must charge a fee for extensions, *see id.* § 41(a)(8); and none was charged here. Thus, the Examiner could not have legally waived the fee requirement. *See* 37 C.F.R. § 1.183.

The MPEP also precludes an Examiner from extending an applicant's time to respond to an Office Action under these circumstances, and the MPEP is binding on Examiners. *See* MPEP Introduction (stating that the MPEP rules govern Examiners' decision-making); *see also In re Kaghan*, 55 C.C.P.A. 844, 387 F.2d 398, 401 (C.C.P.A.1976) (stating that MPEP has the weight of law to the extent its provisions are consistent with the PTO's regulations). The MPEP states that an Examiner has no authority to extend the shortened statutory period unless a petition for extension is filed. *See* MPEP § 710.02(e) ("It should be very carefully noted that neither the primary examiner nor the commissioner has authority to extend the shortened statutory period unless a petition for the extension if [sic] filed."). There is no evidence that a petition for extension was filed either in connection with the '741 application or the '004 application. Thus, by initialing the cover of the '004 prosecution history, the Examiner could not have, consistent with the MPEP, extended the Applicants' time for filing a response in the '741 application. *Cf. Suntiger, Inc. v. Telebrands Advert. Inc.*, No. Civ. A. 97–423–A, 1997 WL 855581, *3–4 (E.D.Va. July 11, 1997) (staying case because a petition for waiver was pending before the PTO); *In re Kokaji*, 2 USPQ2d 1309,1311–12 (Comm'r of Patents & Trademarks 1987) (refusing to grant a petition for a waiver because the applicant had not met the requirements); *Eckey*, 268 F.2d at 892 (remanding to Commissioner after applicant had filed a petition for a waiver with the PTO).

Urologix cites to *Exxon Corp. v. Phillips Petroleum Co.*, 265 F.3d 1249 (Fed.Cir. 2001) for the proposition that the PTO can and must have corrected any technical deficiencies related to the copendency of the applications. In *Exxon*, the applicant filed a continuing application claiming priority to a previous application but instructed the PTO to cancel all claims in the papers submitted.[3] *See Exxon*, 265 F.3d at 1253. One of the statutory requirements for filing a patent application is that it must be filed with at least one claim. *See, e.g.,* 35 U.S.C. § 112, ¶ 2. The PTO caught applicant's mistake and fixed the defect in order to ensure there was no violation of the statute. *See Exxon*, 265 F.3d at 1253. The Federal Circuit held that "[t]he PTO acted within its authority in modifying the plainly incorrect instruction." *Id.* Urologix asserts that the instant case is analogous to *Exxon* because here, as in *Exxon*, "there is no statutory violation," and by continuing on with prosecution, the PTO impliedly fixed the problem with the '004 patent application. (R. 60 at 13.)

However, in the present case, the PTO could not have fixed the problem without committing a statutory violation, i.e., failing to enforce the fee requirement. *See* 35 U.S.C. § 41(a)(8). In addition, the fact that the PTO found and corrected a mistake in *Exxon* does not mean that it did so here. The corrective action taken in *Exxon* is prescribed by MPEP § 714.20. In the instant case, by contrast, there is no corresponding MPEP section authorizing corrective action and no evidence that the PTO took such action.[4] Thus, *Exxon* does not support Urologix's argument.

In light of the statutory requirement with respect to a fee and the MPEP directive precluding the Examiner from extending the response time on the '741 application under the circumstances present here, no reasonable fact finder could conclude that the Examiner intended to do so by simply placing his initials under the words "CONTINUING DATA ... VERIFIED" on the cover page of the '004 application. Thus, Urologix's proposed inference is not reasonable and its evidence creates no genuine factual dispute over whether the PTO waived its extension requirements. Based on the evidence, a reasonable fact finder would be compelled to determine that the PTO did not.

## V. CONCLUSION

The '741 application became abandoned at midnight on February 22, 1991. The application for the '004 patent was filed on March 12, 1991, almost one month later. Thus, there is no copendency between the two applications, making the 1988 French publication prior art to the '004 patent and invalidating the claims asserted to be infringed by ProstaLund. ProstaLund has established invalidity by clear and convincing evidence.

Urologix argues that rather than grant ProstaLund's motion for summary judg-

3. Urologix also cites to two other cases, *Hyatt v. Boone*, 146 F.3d 1348 (Fed.Cir.1998) and *Magnivision, Inc. v. Bonneau Co.*, 115 F.3d 956 (Fed.Cir.1997); however, the facts of those cases are not comparable to those in the present case. *See Hyatt*, 146 F.3d at 1355 (holding that the filing in a continuation application of a photo copy of the oath from the parent application was not an issue of continuity of disclosure, but solely a technical deficiency); *Magnivision*, 115 F.3d at 960 (holding that "prosecution irregularities" relating to alleged bad faith of applicant not relevant to patent validity when charge of inequitable conduct is not pending).

4. Urologix also argues that by permitting the PTO to charge any fees related to the '004 patent application to the Applicants' agent's deposit account, the Applicants gave the PTO a "blank check" to pay any necessary fee. However, papers applying to one application are not to be applied to another application. *See* 37 C.F.R. 1.4(b). Hence, Urologix's argument fails.

ment at this time, I should first allow Urologix to petition the PTO to revive the '741 application for the purposes of perfecting its claim to priority. However, Urologix has known about the copendency problem since at least 1998 when the issue was raised in *Techno Medical Systems v. Dornier Medical Systems, Inc.*, No. 98–C–0345, *4–6 (E.D.Wis. Jul. 17, 1998), yet taken no action to remedy it. ProstaLund has met its burden of demonstrating that the '004 patent is invalid. Thus, Prosta-Lund's motion will be granted.[5]

**THEREFORE, IT IS ORDERED** that defendants' motion for partial summary judgment is **GRANTED** and plaintiff's claims based on the '004 patent are **DIS-MISSED.**

---

**5.** In *Suntiger,* a Virginia district court stayed a case to permit the patentee to petition the PTO; however, the circumstances of that case are distinguishable in several key respects. *See Suntiger,* 1997 WL 855581, at *2. In *Suntiger,* promptly after discovering the problem, the patentee filed a petition to revive the prior application, and such petition was pending before the PTO while the court was considering the motion for summary judgment on invalidity. *Id.* Thus, the court stayed the case because the court was "unwilling to speculate as to the outcome of the proceeding before the PTO" and, given the pending proceeding, any resolution of the invalidity issue would be premature. *Id.* However, here, Urologix has taken no action to remedy the copendency problem and, thus, no issue is pending before the PTO that would make resolution of ProstaLund's motion for summary judgment premature. *Suntiger,* therefore, does not suggest that I should withhold my decision. *Cf. Koka-ji,* 2 USPQ2d at 1312 (holding that applicant waited too long after learning of the abandonment to file a petition to revive).